We're going to move now to Case No. 3, Appeal 22-2012, Hoops, LLC, strike that Hoops, LP v. Commissioner of Internal Revenue. We'll begin with argument from Mr. Kimberley. Thank you, Judge Brennan. May it please the Court, Michael Kimberley for Appellant Hoops. Your Honors, in affirming the disallowance of a deduction in this case, the tax court explained as follows, and this is from pages 9 to 10 of the required short appendix. It said, quote, under the plain terms of Section 404A.5, Hoops is not allowed to deduct deferred compensation until the taxable year for which an amount attributable to that compensation is includible in the employee's gross income. The problem with that reasoning is that the payment at issue here was not a payment of deferred compensation. It was instead a deemed payment from Hoops to Memphis Basketball for Memphis Basketball to assume Hoops' deferred compensation liability in the context of a complete asset sale of the entire enterprise. It thus was not a payment falling within Section 404A.5 at all, and we know this for four reasons. The first is the text, the second is the statutory purpose, the third is the commissioner's own implementing regulations, and the fourth is the general rule against impracticalities. Now, I'll start with the text because that's obviously the starting point in any case about statutory interpretation. What we have in this case is an actual payment. This isn't a circumstance where we have a business that is attempting to deduct something that's merely been accrued. There's actually been a payment here. And as to payment, Section 404A by its plain terms covers, quote, contributions paid by an employer to or under a stock bonus, pension, profit sharing, or annuity plan. That clearly doesn't describe what we have here. Or compensation paid on account of an employee under a plan deferring the receipt of such compensation. So to hold that Section 404A applies in this circumstance, the court would have to hold that the payment, the deemed payment from Hoops to Memphis Basketball for Memphis Basketball to assume this liability of itself constitutes a payment of compensation. And with respect to my friends on the other side and the tax court below, we just don't see how that can be the case. That is not a normal use of language to say that a payment from one company to another company for the second company to assume the first company's liability is in any sense a payment of compensation to an employee. And so if you're with us on that point. What's it a payment for? It is a payment for the assumption of a liability. Okay. And does the nature – let me give you a few different examples. Okay. Suppose that the – I know you're resisting this mode of analysis, but it's your answer that I'm interested in as to why. Okay. Suppose the underlying liability is unpaid wages. Or suppose it's a gambling loss. Or suppose it's a payment to cover expenses from a natural disaster. Your point is that as a legal matter, none of that makes any difference whatsoever. You're saying it's payment to assume a liability. And what you want to do is you want to say stop there. It doesn't matter that the liability happens to be one for a deferred compensation obligation to a non-qualified plan. You're saying you don't even have to get there. That's exactly right. Okay. And would your answer be the same if we were talking about covering a gambling loss? Yes, Your Honor. We would say as to the deemed payment for the assumption for the transfer from the seller of the business to the buyer of the business of any liability, the payment is a payment arising out of the asset purchase agreement making the buyer liable to pay the seller for the assumption of that liability. Okay. And I know that's the way you read the 461 reg. Correct. Okay. The risk, I think, in that position is that you've gone a long way to kind of reading out what would be the ordinary course treatment of the 404A5 item. I mean, Congress is very specific in 404A5 as to the deduction is going to come in a later period. It's modifying the ordinary application of the accrual rule. It's pushing it to the period where, here, the two basketball players receive the underlying compensation. It's just pushing it out. It's a timing provision. Section 404A5 is a timing provision. That's correct. Right. But it's highly, highly specific. Well, it is true that it is a specific rule as to a particular kind of liability in the circumstances under which it may be. And the liability being assumed here in this sale, right, is that kind of liability. It is a deferred compensation obligation to a non-qualified plan. Well, that's true. But I think there are two things to say about this. The first is, as a matter of plain text, the statute doesn't say that payments that are related to these liabilities or that concern these liabilities are subject to this timing rule. They say that payments of compensation, where that compensation falls within the scope of 404A, are subject to this timing rule. But I would say, also, this is not an artifice to avoid 404A. The purchaser, in turn, of the business who assumes this liability, will not be able to deduct any payments that it makes of this assumed liability until the payments are made. So the concept is just that the timing rule really follows the liability. As to hoops, hoops having transferred this liability off its books, and by the way, I'd like to come back to this as well because it's relevant to the practicalities here. Hoops, now having transferred this liability off its books and no longer being a going concern, isn't going to be paying deferred compensation. That's the whole point of having transferred it off its books. I would say this is the way that every other liability is also treated by taxing authorities in this circumstance. The purchase price here was $420 million. There were $220 million of liabilities that were transferred as part of this deal. There's no question that the balance of the $220 million in liabilities are treated in this manner. They are treated as a business expense that is immediately deductible against the realized gain for the transfer of that liability off the books. And that's just by virtue of the operation of the 461 reg. In other words, that tax treatment is attaching because of the provision that you're relying upon here, the sub-5 provision. That's correct, certainly as to any that wouldn't be subject to some other delayed deduction rule. That's correct. So is that regulation, in your view, is it creating a deduction? No. What's it doing? No, I think the way to understand what this regulation is doing is I would say first, there is no ambiguity. All it's doing is confirming our reading of the statute. If you think there is any traction to the government's perspective that the deemed payment here was actually a payment of compensation from hoops to Memphis basketball, so that Memphis basketball in turn could pay compensation, then you'd say, and I would say in that circumstance, you couldn't say that's a matter of plain text. You'd have to say at a minimum that the statute then is ambiguous and its application in this circumstance is ambiguous. And so what I'll call paragraph D51 accomplishes is simply resolving that ambiguity and saying, no, in this special context of a complete asset sale where the seller ceases to continue as a going concern, the buyer takes everything, the way to understand this payment is as a general business expense that's immediately deductible and not a payment of compensation within the meaning of 404A. So it is a regulation that implements section 461H and in doing so, resolves the question of how 461H and 404A interact with one another in this specific context. So is that a way of saying it's not so much creating a deduction, but rather it's more accelerating a deduction that the taxpayer would otherwise be entitled to but for the economic performance rule. It's an acceleration provision in an asset sale scenario. There is a sense in which it's an acceleration and that is a word that was used in some of the comments submitted on the rulemaking. I would say I think the better way to think about it, though, is that in a sense it's a confirmation of the correct way to characterize an expense of this sort. The correct way to characterize a payment from hoops to Memphis basketball is not as a payment of compensation subject to 404A at all, but rather as an ordinary business expense incurred to transfer the liability to the purchaser. I'm going to give you rebuttal time, Mr. Kimberly. Oh, thank you. At least three minutes. Okay. If you want to, we'll hear from the appellee, then you'll get a chance for rebuttal. Wonderful, appreciate it. Thank you. We'll now move to argument from the appellee, Mr. Klimas. May it please the court, Jeff Klimas for the commissioner. One of the primary purposes of Section 404 of the Internal Revenue Code is to protect employees who perform work today based on their employer's promise to pay at least some portion of their compensation in the future, often in the form of a pension. And there are two ways that 404 does that. The first of which is it says that if an employer pre-funds, sets aside money to make sure that that obligation is paid in the future and meets certain other criteria of a qualified plan, then the employer is entitled to an immediate deduction. Alternatively, the second way, if the employer does not set aside those funds to ensure that we don't have an unfunded liability, an unfunded pension liability, for example, down the road, is it hangs this juicy tax benefit, this deduction, out as a carrot that says you will get the deduction, but not unless and until the payment is made to the employees and that amount is includable in their income. Neither of those had occurred in this case at the close of the 2012 tax year, and therefore the tax court correctly held that Hoops was not entitled to a deduction in that year. I want to start with the textual argument that Hoops is making. So they quoted the language of 404A, but with respect to Brother Counsel, he left out two words. It talks about deferred compensation paid or accrued. It doesn't just speak about deferred compensation paid. We obviously agree that deferred compensation was not paid in this case. We wouldn't be here if it was because then the deduction would obviously be allowed under 404A-5. What these deferred compensation liabilities are, though, is they are accrued. They have accrued, and that is the amount that Hoops is trying to deduct. They stipulated that these are accrued deferred compensation liabilities at paragraphs 58 and 59 of the stipulation of facts. That's at Record Appendix A-25 and A-26. While you're on 404A-5 for a second, I think the one thing that I think you're absolutely right about is its ordinary course application is to change the period of the deduction, to move out of just straight accrual, right, and to push it to the period where the compensation is taken into income by the recipient that way. Okay, but there's nothing about 404A-5 that seems to be risking a termination of the deduction. Do you know what I mean by that? In other words, all it's doing is it's changing the period. But there actually seems to be a real risk that the deduction could entirely go away because the compensation is never paid. Why? It's never paid because a contract's renegotiated or something. And that seems at odds with Congress's intent. Congress just wants to move the period in which the deduction could occur, but not to eliminate or terminate the deduction. If the contract was renegotiated, such that payments were made according to a different schedule and possibly not under a deferred basis at all, there would be a deduction that would be allowed for that compensation as renegotiated. So it wouldn't be eliminating the deduction for the payment of compensation, but if the compensation is never paid, for example, if the company just defaults. Yeah, this particular deferred, so take one of the basketball players, it doesn't matter. If that individual is with another employer, another team or something, and renegotiates the contract entirely and says, let's terminate the old deferred comp arrangement that you assumed in the asset sale that I expected to receive, but I'll give it up. And the reason I'm going to give it up is because we're going to renegotiate my compensation with a whole new suite of terms and conditions and incentives and what have you. And I believe that will adequately compensate me for forfeiting the deferred comp that I was owed with the prior owner. Wouldn't that eliminate Hoops' ability to ever get the deduction here? It depends on the way that it was done, and it would be very specific to the facts of the case. So if it was done in a way that accelerated some of those payments, we might end up under 409 cap a of the internal revenue. What if you had an agreement that just said we hereby terminate that obligation and we simultaneously execute a new compensation arrangement? I don't know what would happen in that specific situation. It would really depend on the exact terms. But there's a world in which the deduction could be lost forever because of the terms and conditions on which. That seems at odds with Congress's intent. It would be odd to say that someone, that an employer is going to get a deduction for deferred compensation that is never actually paid. That would be odd, and it doesn't really speak to the question that Congress was addressing, which is to say that we want to make sure that deferred compensation is paid. So I don't know exactly how that would play out, but I don't think that there would be a disappearing deduction because there would never be... The only reason the hypothetical comes to mind in this particular case, we're dealing with professional athletes. You know as well as I do, professional athletes renegotiate contracts all the time as they change teams, as their performance changes, et cetera. And you could quite easily see the new team saying, let's renegotiate it all. You know, you're a star performer. That certainly could happen, Your Honor. And again, it would depend on the specifics in terms of whether there was a payment that was being accelerated or what the economic reality of that would be. You have to look at the substance of that transaction. And what is the effect of, you know, is this deferred compensation just disappearing, such that it's going to be present compensation paid on a going forward basis? I just don't have an answer to that specific question where you're saying it's renegotiated in such a way that deferred compensation is never paid. I'm not sure that that is what Congress was looking at when it drafted the law. Mr. Randolph is retired. Mr. Conley is now playing for a different team. So further to Judge Scudder's questions, does the record reveal whether or not any deferred compensation has, for example, been paid to Mr. Randolph because even his number has been retired? The record does not reflect that. The record does not reflect whether the payment was actually made. It was a 3% discount rate in terms of adjusting that to present value, so it wasn't pushed that far out into the future. But we don't have in the record whether there were actually payments made or, for that matter, whether hoops filed returns in those subsequent years claiming a deduction under 404 for the deferred compensation as it was paid by Memphis Basketball or someone else. We think that as a matter of both form within the text of 404A-5, the 404A, and as a matter of substance, this is a payment of deferred compensation, that there was no functional economic difference to hoops in terms of whether it had actually paid Mr. Conley and Mr. Randolph or if it had just made this payment for someone else to assume that liability. There was, however, a big difference to the employees because they did not actually receive the payment, and that is the issue that's being addressed in terms of 404A-5 is that it's no longer looking at the general 1001 rules. There's a different kind of matching, a matching between the deduction by the employer and inclusion in income by the employee. That is unusual, but it's unusual by design because it's to protect the employee to ensure that they actually get their payments. Determining the proper tax treatment here, do you think it's important that we think it all in terms of this payment being a, quote, deemed payment, unquote, for deferred compensation? That's the construct that hoops is inviting us to adopt that way. Is that the right way to think about it? I think that they're thinking about that the right terms in the fact that they're including gain for the assumption of the liability, but we depart from normal accounting rules because of 404, and so, yes, I think that I understand the point they're making. This is a deemed payment, right? They didn't actually, you know, there was a negative cash. It's essentially a deemed payment because of the discount afforded on the purchase price. Correct. Right. But that ultimately we don't think affects the underlying analysis of whether the deduction is allowable, and what the 461 regulations do is they very specifically, both in the Dash 1 regulations and then again in the Dash 4 regulations, they very specifically start by saying that applicable provisions of the code govern. The same provision, the same language that is at issue that this court interpreted in J.P. Morgan Chase to say the initial question is whether there's a more specific code provision or regulation that applies. A couple paragraphs later, that same 461-1 regulation says, if any provision of the code requires a liability to be taken into account in a taxable year later than a taxable year provided in paragraph A2I of this section, the liability is then taken into account as prescribed in that code provision. The sales provision that they rely on does not change that fact. The fact that Treasury had, both in the Dash 1 regulation and then in the Dash 4 regulation, carved out deferred compensation saying if there's a more specific rule, it governs, and then specifically talking about economic performance being satisfied as opposed to occurring. The Dash 4 regulation talks about economic performance occurring 59 times. It talks about economic performance being satisfied one time. There's a reason that there were different words used, and that is because Treasury was referring back to 404. Is 404, 404 in your view, is it predated, it preexisted 461, correct? Correct. Okay. And so is 404A5 and that specific deferral of the deduction, is that modifying what would otherwise apply under Section 162 with respect to accrual accounting taxpayers and the recognition of compensation-related expenses? Yes, Your Honor. It is modifying that insofar as... Okay. How does 461 and 162 interact in your view? Is 461 like providing refinement to 162 vis-à-vis accrual taxpayers? 461 adds an extra element for accrual-based taxpayers to satisfy before they can claim a deduction, right? It adds an additional thing to check the box. To claim, for example, like a 162 deduction. Correct. Right. So, for example, in a case involving the provision of services, the 461 regulations say, well, economic performance occurs as the services are provided. You know, in the context of certain payment liabilities, a defined term, certain payment liabilities, economic performance occurs as the payments are made. In the preamble to the 461 regulations, Treasury actually talks specifically about employee benefit plans, and specifically about deferred compensation, and says that it is removing a temporary regulation that dealt with deferred compensation. It's removing 1.461H-4T. That regulation, which a lot of commenters said, we like it, that's good, keep it in, and Treasury said no. That regulation said that economic performance for deferred compensation liabilities occurs, occurs using the word occurs and not satisfied, as the amounts are includable in the employee's income. The Treasury's explanation for withdrawing that temporary regulation was that it said that Treasury and the IRS had concluded that the specific timing rule contained in Section 404 should take precedence over the more general economic performance rules. Thank you, Mr. Klimas. Thank you. Mr. Kimberly, we're going to keep things even and give you four minutes on rebuttal. Thank you, Your Honor. Much appreciated. If I may, I'd like to start just briefly with the plain text argument. My friend on the other side pointed to the word accrued appearing in 404A, but this can't be an accrued payment, an accrued liability, or it can't be based on mere accrual. The economic reality of this transaction is that Hoops sold $420 million in assets to Memphis Basketball, and Memphis Basketball paid $420 million for those assets. In turn, Hoops transferred $220 million of liabilities to Memphis Basketball, and it had to pay Memphis Basketball $220 million for that transfer, for that assumption of liability. That is a payment. In turn, Hoops received $200 million in net, but in accounting, Hoops has to realize a gain of $420 million, and in turn it will pay tax on that amount. All you're saying there is the assumed liabilities are part of the amount realized on the sale. That's exactly right, by the Commissioner's own regulations, and we complied with that regulation. Now, it just makes sense to say, in turn, that the amount realized for the assumption of the liability should be offset as a deduction by the amount that Hoops had to pay Memphis Basketball to assume those liabilities. Again, that's a payment. This isn't about just accrual rules. This is about an actual payment, and as to payments, Section 404A and A5 apply only to compensation. So you'd have to say that Hoops paid Memphis Basketball $10.4 million or $10.7 million in compensation, in deferred compensation, for Memphis Basketball to pay these individuals $10.7 million, and actually $12.6 million in deferred compensation. Now, Judge Scudder, as you noted, Section 404A and A5 is really just a timing rule. But again, the period in which the deduction could be taken is about matching what the employer pays to what the employee pays. Again, that follows the liability. Memphis Basketball, assuming it followed through on paying those amounts, it would not take a deduction. It would not actually, under this Court's decision in David Webb, it would not capitalize that amount as a deductible capital expense until it was actually paid. So that timing rule is still being followed. So if the amounts weren't paid, Your Honor, Hoops would be in the position of actually having paid Memphis Basketball. This is a real economic amount of money and not ever being able to take a deduction. Yeah, I think there's a prospect that you could lose the deduction permanently in a contract renegotiation. You all are talking in the briefing more about, well, how do we know if they ever pay? We're never going to know. They're never just going to call us and tell us that way. I think you can contract around that. Okay, but there's nothing that Hoops can do that can prevent one of these two individuals from renegotiating their compensation in a way that included a term of terminating the prior deferred compensation. That's exactly right. Another scenario, Your Honor, is that the buyer goes bankrupt, or the buyer sells to another buyer, and that buyer goes bankrupt, or that buyer renegotiates the contracts. Again, I think it was for precisely these reasons and a recognition, too, that the seller in an asset sale will cease doing business. It's supposed to wind down and go away. It makes no sense to require the seller business to sort of remain hanging around as some kind of corporate legal skeleton just for the purpose of taking these deductions. And it was for precisely this reason that the Commissioner himself, at page 12,415 of Volume 57 of the Federal Register, explained that in this specific scenario where there is a question whether 404A5 applies or instead the general deduction rules of 461H apply, the deduction rules of 461H should apply. That's how we end up with D51, the terms of which plainly apply in these circumstances. And for that reason, we'd ask the Court to reverse the tax court. Thank you very much, Mr. Kimberly. Thank you very much, Mr. Klimas. The case will be taken under advisement.